IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 18, 2003 Session

**STATE OF TENNESSEE  v.  DANIEL L. ROBINSON**

**Direct Appeal from the Criminal Court for Davidson County
Nos. 2000-C-1609, 2000-B-902     Steve Dozier, Judge**

**No. M2003-00594-CCA-R3-CD - Filed February 11, 2004**

Defendant, Daniel L. Robinson, entered guilty pleas on December 19, 2001, to the offenses of felony possession of less than .5 grams of cocaine, in case 2000-C-1609, and attempted possession of cocaine with intent to sell, in case 2000-C-902.  Defendant was sentenced to five years probation for each conviction, to be served consecutively for a total effective sentence of ten years probation.  On January 10, 2003, a probation violation warrant was issued against Defendant, alleging that he had violated the terms and conditions of his probation based on a new arrest for homicide.  Following an evidentiary hearing, the trial court found that Defendant had violated the terms and conditions of his probation and ordered that Defendant's original sentences be placed into effect.  After a review of the record, we conclude that the trial court erred in ordering revocation.  Accordingly, we reverse the judgment of the trial court and dismiss the probation violation warrant.

**Tenn. R. App. P. 3 Appeal as of Right;
Judgment of the Trial Court Reversed and Dismissed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and NORMA MCGEE OGLE, J., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Daniel L. Robinson.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Amy Eisenbeck, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

The probation violation warrant alleges that Defendant violated "Rule 1," which states that "[Defendant] will obey the laws of the United States as well as any municipal ordinances."  The factual basis in the warrant supporting this allegation is meager: "Subject turned himself in on a Warrant for 2 Counts of Criminal Homicide."  The proof at the hearing involved only the death of Kevin Whitelaw on Thanksgiving day in 2002.  Therefore, we are unsure why one warrant would

allege two counts of homicide. Nevertheless, it is clear from the record that the death of Kevin Whitelaw was the basis for the revocation of probation.

At the probation revocation hearing, Detective Robert Swisher testified that on the night of November 28, 2002, the police were dispatched to the residence of Carrie Whitelaw, the grandmother of both Defendant and Kevin Whitelaw. Ms. Whitelaw had discovered Kevin Whitelaw dead in his upstairs bedroom. Defendant and Mr. Whitelaw were half-brothers. They had allegedly been involved in two separate altercations earlier that day. Detective Swisher interviewed those present in the residence, and witnesses stated that Defendant and Mr. Whitelaw had been "wrestling," but no punches were thrown. Defendant left the residence after the second altercation. Ms. Whitelaw stated to Detective Swisher that at approximately 8:30 p.m., Defendant's father arrived at Ms. Whitelaw's house to retrieve a baseball cap that Defendant had left there. Ms. Whitelaw yelled upstairs to Kevin to ask if he had the ball cap, and he responded, "no." No one in the house had any contact with the victim thereafter. At approximately 11:00 p.m., Ms. Whitelaw went upstairs and found Kevin unresponsive, lying on his stomach in his bedroom.

Referencing the autopsy report, Detective Swisher testified at the hearing that Kevin Whitelaw died as a result of blunt force trauma to the head. He also had bruising to the cheek areas and abrasions on his back. Detective Swisher also testified that the medical examiner said that Mr. Whitelaw would have died, after his injury, "quickly, within several hours." Detective Swisher was permitted to testify as to the findings of the medical examiner without a hearsay objection, and he relayed the cause of death (blunt force trauma to the head), but he never mentioned the medical examiner's conclusion, if any, as to the *manner* of death (homicide, accident, etc.). The autopsy report was not made an exhibit by the State, although the record indicates that the prosecutor had possession of it at the hearing and was reluctant to allow defense counsel to review it until finally being required by the trial court to show it to defense counsel. There was no testimony or other proof that the bruising and abrasions on Mr. Whitelaw occurred at or about the same time as the blunt force trauma to the head or whether the medical examiner surmised what type of object(s) might have caused the blunt trauma.

Defendant also presented proof at the probation revocation hearing. Carrie Whitelaw testified that Defendant and Mr. Whitelaw had an altercation in the dining room before dinner. They argued about whether Mr. Whitelaw had been disrespectful to Ms. Whitelaw. Ms. Whitelaw saw Mr. Whitelaw "leap" at Defendant, and Defendant then grabbed Mr. Whitelaw. The altercation ended when the men were told by other family members to stop fighting. Another subsequent altercation, which Ms. Whitelaw did not observe, apparently occurred between the two men after dinner in a "back room." During the scuffle, a picture was knocked from the wall. Defendant and Mr. Whitelaw had to be physically separated from each other by other family members. Following that altercation, family members escorted Defendant out of the house. Ms. Whitelaw discovered Mr. Whitelaw dead several hours later.

Lashanandra Holt, the sister of both Defendant and Mr. Whitelaw, testified that she saw Defendant and Mr. Whitelaw "wrestling," but no punches were thrown.

-2-

There was no testimony at the hearing that any altercation occurred upstairs in Mr. Whitelaw's bedroom, where his body was found. The clear implication in the proof is that Mr. Whitelaw walked up the stairs to his bedroom under his own power.

In its order revoking probation, the trial court found that Defendant and Mr. Whitelaw had been wrestling and arguing prior to Mr. Whitelaw's death. The trial court also found that witnesses Carrie Whitelow and Lashanandra Holt gave inconsistent accounts of the incident and that their statements to Detective Swisher on the night of the incident differed from their testimony at the revocation hearing. The trial court found that there was circumstantial proof sufficient to conclude by a preponderance of the evidence that Defendant violated the conditions of his probation.

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. § 40-35-311(d). The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). We review a trial court's revocation of probation for an abuse of discretion, rather than under a *de novo* standard of review. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation or community correction sentence has occurred. *Id*.; *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need not be established beyond a reasonable doubt, and the evidence need only show that the trial judge exercised a conscientious and intelligent judgment, rather than acting arbitrarily. *Id*.; *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

We conclude that the record contains no substantial evidence to support the conclusion that a probation violation occurred. Viewed in a light most favorable to the State, Defendant and Mr. Whitelaw engaged in two separate physical altercations preceding Mr. Whitelaw's death. There was proof at the revocation hearing that Mr. Whitelaw died from blunt force trauma to the head. There was no proof, however, as to the manner of his death. Both altercations occurred in the downstairs part of Ms. Whitelaw's house. Thereafter, Defendant left the residence. Mr. Whitelaw was still responsive at 8:30 p.m., when Ms. Whitelaw called upstairs to him to ask if Defendant had left his baseball cap there. At approximately 11:00 p.m., Ms. Whitelaw found Mr. Whitelaw unresponsive, upstairs in his bedroom. Detective Swisher testified that none of the family members whom he interviewed saw Mr. Whitelaw fall or be pushed to the ground. Also, none of the family members saw any punches thrown by either Defendant or Mr. Whitelaw.

Some of the testimony of Detective Swisher indicated that Ms. Whitelaw gave inconsistent statements. Detective Swisher testified that Ms. Whitelaw stated on the night of the incident that she saw Defendant put Mr. Whitelaw in a headlock during the second altercation. Ms. Whitelaw testified at the hearing that she never saw Defendant put Mr. Whitelaw in a headlock. It requires proof only by a preponderance of the evidence that a defendant has violated a condition of probation in order to sustain a revocation of probation. The proof presented by the State at the revocation hearing falls woefully short of that standard. Even if the trial court accredited Detective Swisher,

the circumstantial proof at the revocation hearing was insufficient to conclude by a preponderance of the evidence that Defendant killed Mr. Whitelaw.

## CONCLUSION

The judgment of the trial court is reversed and the probation violation warrant is dismissed.

_____
THOMAS T. WOODALL, JUDGE